IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA TODD,

        Plaintiff,

vs.                               Case No. 13-1023-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

3

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On August 12, 2011, administrative law judge (ALJ) John B. Langland issued his decision (R. at 13-22). Plaintiff alleges disability beginning on October 30, 2009, the date plaintiff filed for disability (R. at 13). At step one, the ALJ found

4

that plaintiff has not engaged in substantial gainful activity since plaintiff's application date of October 30, 2009 (R. at 15). At step two, the ALJ found that plaintiff has the following severe impairments: anxiety disorder/PTSD, depression, history of ADHD and decreased visual acuity (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 21). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 21-22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p,

1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings: plaintiff can perform medium work in that she can lift and carry up to 50 pounds occasionally and 25 pounds frequently. She can stand or walk a total of 6 hours out of an 8-hour workday. She can perform work not involving the reading of fine print or involving exposure to workplace hazards such as unprotected heights and dangerous moving machinery. She can perform simple, unskilled work involving routine, repetitive tasks within a low-stress environment where she would not be subject to the demands of fast-paced production work. She can perform occasional, simple, work-related decision-making, but no complex planning or negotiation. She can tolerate minor, infrequent changes within the workplace. She would require frequent (up to once per hour) redirection to work tasks (R. at 17).

Plaintiff received treatment from Dr. Kerin Schell, a psychologist, on a number of occasions in 2009-2010 (R. at 201-213, 231-259, 260-290). Dr. Schell repeatedly gave plaintiff a GAF of 35.[2] Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's

---

[2] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoid friends, neglects family, and is unable to work…).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

7

ability to work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to keep a job. Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).  On February 10, 2010, Dr. Schell indicated that plaintiff cannot work for a number of reasons, including depression, apathy, low energy, manic and racing thoughts, irritable/angry, anxiety, worry, panic, agoraphobia, hallucinations, and pain disorder (R. at 246).  Dr. Schell, on April 9, 2010, described plaintiff's hallucinations as severe, categorizing them as occasional borderline psychotic hallucinations: hearing a voice talking outside of person's head; seeing spirits and people occasionally (R. at 280).  On June 18, 2010, Dr. Schell noted that plaintiff revealed that she was talking to a murdered friend daily about writing a book (R. at 265).  The ALJ gave little weight to the opinions of Dr. Schell for a number of reasons (R. at 19-20).

As stated in SSR 96-8p, "the RFC assessment must include a narrative discussion describing how the evidence ***supports each conclusion***, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013)(emphasis in original).  An exact correspondence between a medical opinion and the RFC is not required.  In reaching his

RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file.  That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.  The Commissioner must make every reasonable effort to ensure that an acceptable medical source has completed the medical portion of the case review and any applicable RFC assessment.  Wells, 727 F.3d at 1071-1072.

The court is concerned with the fact that, other than Dr. Schell's notes and assessment, to which the ALJ gave little weight, there is no other medical opinion evidence regarding plaintiff's RFC, and the ALJ has not pointed to any evidence, medical or otherwise, in support of his RFC findings.  In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence.  The court stated that no other medical evidence in the record specifically addressed her ability to work.  The court held as follows:

> To the extent there is very little medical
> evidence directly addressing Ms. Fleetwood's
> RFC, the ALJ made unsupported findings
> concerning her functional abilities. Without
> evidence to support his findings, the ALJ
> was not in a position to make an RFC
> determination.
>
> The ALJ's inability to make proper RFC
> "findings may have sprung from his failure
> to develop a sufficient record on which
> those findings could be based." Washington
> v. Shalala, 37 F.3d 1437, 1442 (10th
> Cir.1994). The ALJ must "make every
> reasonable effort to ensure that the file
> contains sufficient evidence to assess RFC."
> Soc. Sec. R. 96-8p, 1996 WL 374184, at *5.
> Because the disability hearing is
> nonadversarial, an ALJ is obligated to
> develop the record even where, as here, the
> claimant is represented by counsel. Thompson
> v. Sullivan, 987 F.2d 1482, 1492 (10th
> Cir.1993); accord Hawkins v. Chater, 113
> F.3d 1162, 1164, 1168 (10th Cir.1997). Even
> though Ms. Fleetwood's counsel did not
> request any additional record development,
> the need for additional evidence is so
> clearly established in this record that the
> ALJ was obliged to obtain more evidence
> regarding her functional limitations. See
> Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741; see Martin v. Astrue, Case No. 09-1235-SAC (June 28, 2010, Doc. 13-15, 16-18).

However, in the case before the court, the record clearly shows plaintiff's failure to cooperate. A note dated November 10, 2009 notes that plaintiff received a prior denial for failure to cooperate, did not go to CE (consultative exam). A note of November 13, 2009 stated that the agency needed plaintiff to return adl (activities of daily living form) to

10

obtain cooperation to schedule mse (mental status exam).  A note of November 20, 2009 indicated that a message was left for the plaintiff, and an attempt to contact plaintiff by phone.  A message was left with plaintiff's mother, requesting that plaintiff call the agency.  Again, on November 24, 2009, an attempt was made to contact the plaintiff.  A message was left with a third party and her representative that forms have not been returned.  On December 2, 2009, a message was left with plaintiff's attorney, indicating that plaintiff had not returned her forms.  The agency requested that the forms be returned or the agency be contacted by December 4, 2009, or a decision may need to be made with the information in the file.  On December 4, 2009, a letter was sent to plaintiff asking that the forms be returned by December 14, 2009, stating that if the forms were not returned, a decision will be made without this evidence and this could result in a denial of benefits.  On December 4, 2009, the agency unsuccessfully attempted to contact plaintiff by phone.  A message was left with a 3rd party requesting a return phone call.  On December 15, 2009, it was noted that plaintiff had failed to cooperate; no response had been received from plaintiff or a representative of the plaintiff.  The agency was unable to get the function forms from the plaintiff.  It was noted that a MSE (mental status exam) was needed to fully assess the plaintiff's allegations.  It noted a prior denial for

failure to cooperate.  The agency notes states that they will proceed with insufficient evidence (R. at 146-149).

A psychiatric review technique form signed by Dr. Cohen on December 16, 2009 stated that there was insufficient evidence to make a medical disposition.  Dr. Cohen indicated that multiple attempts were made to contact the plaintiff, but that phone calls and letters did not result in getting the function forms from the plaintiff.  Dr. Cohen stated that a MSE (mental status exam) was needed to fully assess plaintiff's allegations (R. at 214, 224, 226).  On September 21, 2010, Dr. Siemsen filled out a case analysis stating that there is insufficient evidence due to failure to cooperate (R. at 292).

The record contains very little evidence, especially medical opinion evidence regarding plaintiff's RFC; the only medical evidence is that of Dr. Schell, and her opinions were given little weight by the ALJ.  The case law is clear that the ALJ has a duty to develop a sufficient record on which to base their RFC findings.  However, in the case before the court, the agency repeatedly tried to contact plaintiff and her attorney by phone and letter in order to obtain function forms from the plaintiff; the agency noted that an MSE (mental status exam) was needed to fully assess plaintiff's allegations.  The agency sent a letter to plaintiff warning her that failure to return the forms could result in a denial of benefits.  Dr. Cohen and Dr.

Siemsen were unable to provide opinions because of plaintiff's failure to cooperate.

According to C.F.R. § 416.918(a), if a claimant is applying for benefits, and does not have a good reason for failing or refusing to take part in a consultative examination or test arranged by the agency in order to determine if the claimant is disabled, the agency "may find that you are not disabled." In other words, the regulation indicates that a claimant may be denied benefits as a sanction for the claimant's disobedience. Pearce v. Sullivan, 871 F.2d 61, 62 (7th Cir. 1989). Although the ALJ did not expressly cite to this statute to support his finding that plaintiff was not disabled,[3] the court finds that plaintiff's failure to fill out function forms needed so that a mental status exam could be conducted, to permit Dr. Cohen to evaluate plaintiff's mental condition, or to permit Dr. Siemsen to evaluate plaintiff's condition, provide sufficient reason to affirm the ALJ's decision to deny benefits. An ALJ cannot develop a sufficient record on which to determine if plaintiff's impairments meet or equal a listed impairment or make RFC findings when plaintiff refuses to cooperate. On the facts before the court in this case, the court finds that, because of plaintiff's refusal to cooperate, the ALJ did not err by giving

---

[3] The ALJ did note the multiple attempts made to contact plaintiff to obtain forms (R. at 19-20), and defendant's brief noted plaintiff's refusal to cooperate with examinations or provide evidence requested (Doc. 15 at 19). Plaintiff did not address plaintiff's failure to cooperate in either her initial brief or her reply brief.

13

little weight to the opinions of Dr. Schell and making a determination that plaintiff could work based on the ALJ's RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 11th day of March 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge